424 So.2d 997 (1982)
STATE of Louisiana
v.
Robert JACKSON.
No. 82-KA-0332.
Supreme Court of Louisiana.
November 29, 1982.
Rehearing Denied January 28, 1983.
*998 William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., Harry F. Connick, Dist. Atty., John F. Craft, Asst. Dist. Atty., for plaintiff-appellee.
Ronald J. Rakosky, New Orleans, for defendant-appellant.
DENNIS, Justice.
The defendant, Robert Jackson, was convicted by a twelve person jury of second degree murder, La.R.S. 30.1, and was sentenced to life imprisonment without benefit of parole, probation, or suspension of sentence. In his appeal, he alleges thirty assignments of error. We find potential merit in his contention that his confession and certain physical evidence should have been suppressed because of the illegality of his arrest. However, due to the erroneous rulings of the trial judge during the hearing on his motion to suppress, which prevented the defense counsel's inquiry into the circumstances of the defendant's arrest and subsequent interrogation, we cannot determine whether the defendant's confessions were products of constitutional violations. Therefore, we remand this case to the trial judge with the instruction to conduct a hearing and resolve this matter in a manner consistent with the views we express in this opinion.
The body of Whitney Schultz, a New Orleans firefighter, was found under a bed in Mason's Motel at about 3:30 p.m. on September 24, 1979 by a motel housekeeper. The motel room did not contain any signs of a struggle. During his homicide investigation, New Orleans police Sergeant Wayne Cooper received information from fellow officer Detective Vivian Jackson about a false complaint of rape and kidnapping she had investigated at the same motel room at approximately 1:00 p.m. on September 23, 1979, the day before Schultz's body was found. Upon receiving the complaint, Officer Jackson went to the motel and found four persons present in the room: Edward Wynn, who registered for the room under the name of James Davis, Audrey Brown, Stephanie Johnson and Robert Jackson, the defendant herein, who correctly identified himself. Audrey Brown was responsible for the complaints of rape and kidnapping. Detective Jackson decided after talking to her that the complaints were part of a hoax designed to obtain free transportation to her home in Florida. No action was taken on the complaint.
Solely on the basis of the information that the defendant and his companions had been present in the motel room some 26 hours before the discovery of Schultz's body, the New Orleans Police placed a notice *999 that the foursome was wanted in connection with a murder in the National Crime Information Center's computer. Insofar as the record discloses, Cooper was not aware of the time of Schultz's death, or whether the room had been rented to other persons after the defendant's group had departed.
Robert Jackson and Audrey Brown were arrested in San Diego, California on October 9, 1979. They were taken in for questioning, and both gave statements to the San Diego police. New Orleans police, armed with an arrest warrant issued partly on the basis of these statements, went to California to collect Jackson. He waived extradition, and the New Orleans police returned to Louisiana with him, the statements and information relayed to them by the San Diego police, and a purse seized by San Diego police that supposedly belonged to Schultz's girlfriend.
In New Orleans, during custodial interrogation, Robert Jackson signed a statement admitting to the murder of Whitney Schultz. He told of how the foursome had stopped in New Orleans because his car had broken down during their journey from Orlando, Florida to San Diego. Jackson stated that he and Ed Wynn met the victim at an automatic banking teller, asked Schultz for a ride, and invited him up to their motel room. Jackson said that while the two women were hiding in the bathroom, he strangled Schultz with his belt but stopped when the victim began to bleed from the nose and mouth. According to Jackson's statement, he and Wynn put Schultz under the bed, travelled to San Diego with the two women in Schultz's car, and used Schultz's VISA card to purchase food and gas along the way.
Jackson moved to suppress his statements and the purse on the ground that they were products of his illegal arrest in California. During the motion to suppress hearing the trial court sustained the state's objection to defense counsel's cross-examination of witnesses pertaining to facts surrounding the arrest, interrogation and confession in California. The defendant's attorney was also prevented from inquiring into whether the California statements were used by the New Orleans police in their interrogation of the defendant. The only evidence presented by the state at either the motion to suppress hearing or the trial to demonstrate the validity of Jackson's arrest was testimony that Schultz's body was found in the same motel room that the defendant had used one day earlier.
In Wong Sun v. United States, 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963), the United States Supreme Court held that a confession obtained as a direct result of an arrest made without probable cause should be suppressed. When the defendant challenges the admissibility of a confession on the ground that it was the result of an arrest made without probable cause, "the burden of showing admissibility rests on the prosecution." State v. Scott, 355 So.2d 231 (La.1977), citing Brown v. Illinois, 422 U.S. 590, 95 S.Ct. 2254, 45 L.Ed.2d 416 (1975). See State v. Franklin, 353 So.2d 1315, 1318 (La.1977). This affirmative showing must be made by establishing that probable cause existed to arrest the defendant or, if the arrest was unlawful, by showing that the causal connection between it and the subsequently obtained confession was so attenuated that the confession could not properly be considered as a fruit of the illegal arrest. State v. Scott, supra, citing Wong Sun v. United States, supra. See, State v. Jenkins, 340 So.2d 157 (La.1976).
Any lawful arrest, whether warrantless or pursuant to an arrest warrant, must be based upon probable cause to believe that the person arrested has committed or is committing an offense. State v. Scott, supra; State v. Herbert, 351 So.2d 434 (La.1977); State v. Ranker, 343 So.2d 189 (La.1977); State v. Jackson, 337 So.2d 508 (La.1976). Although the measure of probable cause does not require that the arresting officer have sufficient proof to convict the accused, the arrest may not be predicated upon mere suspicion. State v. Scott, supra; State v. Randolph, 337 So.2d 498 (La.1976).
*1000 In discussing the factors to be considered in determining when the connection becomes so attenuated that suppression of a confession resulting from an unlawful arrest is not required, the United States Supreme Court, in Brown v. Illinois, stated:
It is entirely possible, of course, as the State here argues, that persons arrested illegally frequently may decide to confess, as an act of free will unaffected by the initial illegality. But the Miranda warnings, alone and per se, cannot always make the act sufficiently a product of free will to break, for Fourth Amendment purposes, the causal connection between the illegality and the confession. They cannot assure in every case that the Fourth Amendment violation has not been unduly exploited. See Westover v. United States, 384 U.S. 436, 496-497, 86 S.Ct. 1602, 16 L.Ed.2d 694, 10 A.L.R.3d 974 (1966).
While we therefore reject the per se rule which the Illinois courts appear to have accepted, we also decline to adopt any alternative per se or `but for' rule. The petitioner himself professes not to demand so much. Tr. of Oral Arg. 12,45, 47. The question of whether a confession is the product of free will under Wong Sun must be answered on the facts of each case. No single fact is dispositive. The workings of the human mind are too complex, and the possibilities of misconduct too diverse, to permit protection of the Fourth Amendment to turn on such a talismanic test. The Miranda warnings are an important factor, to be sure, in determining whether the confession is obtained by exploitation of an illegal arrest. But they are not the only factor to be considered. The temporal proximity of the arrest and the confession, the presence of intervening circumstances, see Johnson v. Louisiana, 406 U.S. 356, 365, 92 S.Ct. 1620 [1626], 32 L.Ed.2d 152 (1972), and, particularly, the purpose and flagrancy of the official misconduct are all relevant.... Brown v. Illinois, supra, 422 U.S. at 427, 95 S.Ct. at 2261.
Serious errors occurred in the pretrial hearing when the defendant Jackson's counsel was prevented from ascertaining whether there was probable cause for his arrest in California and whether the statements and purse obtained there were used during the Louisiana interrogation. We are unable to conclude from the record before us that the state carried its burden of establishing the admissibility of the defendant's confession by either showing that probable cause existed to arrest the defendant or that the causal connection between an unlawful arrest and a subsequent confession had been broken for Fourth Amendment purposes.
Normally, reversal is required when trial error permits a jury to be exposed to an incriminating statement by the defendant, when that statement might not be admissible, if inquiry had been permitted which was curtailed by the erroneous trial ruling. State v. McGraw, 366 So.2d 1278, 1289-90. (La.1979). Nevertheless, when the error has occurred in a ruling during a hearing on a pre-trial motion to suppress a confession, our recent practice has been to remand the motion for a reopened hearing to admit the omitted or improperly excluded evidence. State v. Scott, 355 So.2d 231 (La.1978); State v. Hills, 354 So.2d 186 (La. 1977); State v. Simmons, 328 So.2d 149 (La.1976). As we explained in Simmons, 328 So.2d 153, by this practice "the error might be eliminated upon another trial of the motion to suppress," and a new trial on the merits be avoided if in fact no error at such trial has occurred. State v. Edwards, 375 So.2d 1365, 1366 (La.1979).
We find appropriate this procedure of remand for a reopened hearing on the motion to suppress. Accordingly, we remand the motion to suppress for the trial court to receive at the reopened hearing evidence as to probable cause for the arrest of the accused, in accordance with the views expressed above, and for it to make its ruling on the motion in the light thereof and of evidence previously received consistent with the holdings in State v. Scott and Brown v. Illinois, cited above. State v. Edwards, supra.
*1001 Because we have not completed our review of other substantial contentions raised by this appeal, we otherwise retain jurisdiction of this appeal, with the following directions: if the trial court finds that the confession and evidence should have been suppressed, it is directed to grant the defendant's motion for a new trial (and the present appeal will be mooted); if, on the other hand, the trial court reinstates its denial of the motion to suppress, it is ordered to transmit to this court its ruling and the record of the reopened hearing on the motion to suppress, in order that this court may complete its review of the issue under the assignments of error previously made and any further ones made as a result of the rulings at the reopened hearingas well as for us to complete our review of the remaining assignments of error raised by this appeal. State v. Edwards, supra.

Decree
Accordingly, the motions to suppress the confession and evidence are remanded to the trial court for further proceedings in accordance with the views and directions expressed by this opinion. In accordance with and subject to the directions expressed by this opinion, this court otherwise retains jurisdiction of this appeal.
REMANDED.
MARCUS, J., dissents and assigns reasons.
BLANCHE, J., dissents and assigns reasons.
WATSON, J., dissents being of the opinion that there was attenuation sufficient to validate the statement taken in New Orleans.
MARCUS, Justice (dissenting).
Even assuming no probable cause existed to arrest defendant, I consider defendant's confession obtained in New Orleans after his arrest, waiver of extradition and return from San Diego to be a product of his free will. In other words, the causal connection between the alleged illegal arrest and the subsequently obtained confession was so attenuated that I do not consider the confession to be a fruit of the alleged illegal arrest. Accordingly, I respectfully dissent.
BLANCHE, Justice (dissenting).
I respectfully dissent being of the opinion that the second inculpatory statement was voluntarily given and sufficiently attenuated by time and circumstances from any irregularities concerning his arrest in California.
LEMMON, Justice, concurring in Denial of Rehearing.
The decision on original hearing does not mean there was no probable cause for defendant's arrest in California.[1] Neither does the decision mean that defendant's confession in Louisiana, six days after his California arrest with an intervening waiver of extradition, was not so attenuated as to be free of any taint of a possible illegal arrest. However, one of the factors to be considered in determining attenuation is the purpose and flagrancy of the alleged illegal misconduct, and the trial judge at the hearing on the motion to suppress incorrectly denied defendant the opportunity to inquire into the details of the California arrest.
The trial judge also erred in stating that the defendant had the burden of proving the inadmissibility of the confession. See La.C.Cr.P. Art. 703 D.
When all of these factors are considered, it is appropriate to remand for a reopened hearing on the motion to suppress.
NOTES
[1] The record from the trial contains the testimony of Helen Brown that she and defendant were arrested while fighting on a public street in California, and the prosecutor indicated in oral argument that the arresting officer found the murder victim's car and his girl friend's purse. However, neither of these facts was established at the motion to suppress.